**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Peter Robert WILSON, a/k/a Robert
Paul Matthews, Defendant–
Appellant.**

No. 98–6059.

United States Court of Appeals,
Sixth Circuit.

Argued: Oct. 29, 1999

Decided and Filed: Dec. 1, 1999

ARGUED: Gary J. Sergent, O'HARA, RUBERG, TAYLOR, SLOAN & SERGENT, Covington, Kentucky, for Appellant. David Bunning, OFFICE OF THE U.S. ATTORNEY, Covington, Kentucky, for Appellee. ON BRIEF: Gary J. Sergent, O'HARA, RUBERG, TAYLOR, SLOAN & SERGENT, Covington, Kentucky, for Appellant. David Bunning, OFFICE OF THE U.S. ATTORNEY, Covington, Kentucky, for Appellee.

Before: WELLFORD, MOORE, and GILMAN, Circuit Judges.

GILMAN, Circuit Judge.

Peter Robert Wilson pled guilty to the charge of failing to report to the federal prison in Ashland, Kentucky after his conviction and sentence for a drug offense. He now appeals the additional eighteen months of imprisonment that he received for failing to report, claiming that the district court erred when it refused to grant him a two-level reduction under the United States Sentencing Guidelines ("U.S.S.G.") for acceptance of responsibility, and when it gave him a two-level increase under the U.S.S.G. for obstruction of justice. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

The district court sentenced Wilson to a sixty-four month term of imprisonment for distribution of methamphetamine, and directed him to report on January 20, 1998 to the federal prison in Ashland, Kentucky. Wilson failed to report, however, and was arrested as a result of a routine traffic stop on January 29, 1998 in Franklin Park, Illinois. On February 11, 1998, Wilson was indicted under 18 U.S.C. § 3146(a)(2) for failing to report to the prison. Wilson then appeared on March 11, 1998 before a magistrate judge and entered a plea of guilty to the indictment. As part of the initial plea agreement, the government agreed to recommend a two-level reduction for acceptance of responsibility.

On June 23, 1998, however, the government exercised its option to set aside the plea agreement on the basis that Wilson had not been truthful with the probation office and the magistrate judge about his legal name and criminal history. During the preparation of the presentence report ("PSR"), representatives from the probation office discovered that Wilson's legal name was Robert Paul Matthews. This was verified by a set of fingerprints taken from Wilson that matched those of Matthews. When the probation office ran Wilson's criminal history using his birth name, it found that he had a lengthy criminal record dating back to 1959. The additional criminal history consisted of (1) a 1959 Illinois burglary conviction, (2) a 1963 Illinois theft conviction, (3) a 1963 Illinois burglary arrest, (4) a 1966 Illinois burglary arrest, (5) a 1966 California traffic conviction, and (6) a 1976 California arrest for carrying a loaded firearm.

After the probation officer confronted Wilson with this information, he admitted that his legal name was Matthews, and that he had lied about his prior criminal history. When asked why he had lied about his legal name, date of birth, and past criminal history, he replied that "[i]t was so long ago, I didn't think it mattered."

Wilson was then placed on notice that the government intended to object to any reduction for acceptance of responsibility

sought pursuant to U.S.S.G. § 3E1.1 and, instead, would seek to enhance his sentence for obstructing justice pursuant to U.S.S.G. § 3C1.1. On July 29, 1998, Wilson appeared for sentencing before the district court. At sentencing, Wilson made three objections to the PSR, two of which are the subject of this appeal. Wilson claimed that he should not receive an enhancement for obstruction of justice for using the alias Peter Robert Wilson, and that he should receive a reduction for acceptance of responsibility. In making these arguments, Wilson pointed out that the two prior felony convictions occurred when he was 15 and 18 years of age, and are thus too old to be counted in his criminal history category. Although he claims that he had been using the name Wilson for over 30 years, and that his children are known by the name Wilson, he was apparently also using his birth name at least as recently as his 1976 California arrest for carrying a loaded firearm.

The district court overruled Wilson's objections and adopted the factual findings and guideline applications contained in the PSR. In doing so, the district court stated the following:

> Of course what you have said, [defense counsel], you described a man who has total disrespect for the law, total disrespect for this court, total disrespect for his family, total disrespect for everybody concerned in this proceeding. You said when he pled before the magistrate both times, or the first time at least, he was asked what his name was, I'm sure, under oath, and at that time he committed perjury. This probation officer asked him, as on her checklist, have you ever been known by any other names, and he denied that although he may not have been under oath. I don't know if they swear to that, but he caused her a lot of trouble and showed total contempt for the processes of the court at that time.
>
> Then he came before the court three times, asked for an extension at least once that we gave him, and then showed total disregard for the court. We allowed him the privilege of self-surrender, and he showed total disregard for the court and law by taking it upon himself to give himself a further extension, and then he didn't turn himself in. He was caught on a traffic charge, I think, in Chicago and he still went by the wrong name—by a false name until he was caught by reason of the fingerprints. Why he wasn't caught the first time by the fingerprints, I don't know. I have no sympathy for this man whatsoever after we extended him every privilege considering that he did showed [sic] disregard for the law, the court.... He's actually lucky I don't go to the maximum. If these guidelines were any lower, I'd depart upward. I think these enhancements are fully justified.

Because the district court found that Wilson had misled the probation office, the magistrate judge, and the district court itself about his prior criminal history, it concluded that a two-level enhancement for obstruction of justice was appropriate under U.S.S.G. § 3C1.1. Based on the same reasoning, the district court also concluded that Wilson had committed perjury, and therefore was not entitled to a reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. Wilson was sentenced to an eighteen-month term of imprisonment. On August 6, 1998, Wilson filed this timely appeal.

## II. ANALYSIS

### A. Obstruction of justice

#### 1. De novo standard of review

"The question as to whether [Wilson]'s conduct constitutes obstruction of justice, turns primarily on the legal interpretation of a guideline term and is thus reviewed de novo. This court is also required to give due deference to the district court's application of the guidelines to the facts." *United States v. Charles,* 138 F.3d 257, 266 (6th Cir.1998) (internal quotation

marks and citations omitted). The district court's findings of fact will not be disturbed unless clearly erroneous. *See United States v. Zajac*, 62 F.3d 145, 148 (6th Cir.1995).

### 2. The district court did not err when it found that the facts justified a two-level enhancement for obstruction of justice

■ In the case at bar, Wilson claims that his use of an assumed name was not material to his conviction or sentence. He thus argues that the district court erred when it gave him a two-level enhancement for obstruction of justice. The applicable guideline is § 3C1.1 of the U.S.S.G., which provides as follows:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

The commentary to § 3C1.1 suggests, among other things, that the enhancement should be applied when a person provides "materially false information to a judge or magistrate," or provides "materially false information to a probation officer in respect to a presentence or other investigation for the court." U.S. SENTENCING GUIDELINES MANUAL § 3C1.1, cmt. (4)(f), (h) (1999). On the other hand, "providing a false name or identification document at arrest," or "providing incomplete or misleading information, not amounting to a material falsehood, in respect to a presentence investigation" is not sufficient to trigger the enhancement. *Id.* at § 3C1.1, cmt. (5)(a), (c) (1999). "Material evidence, fact, statement, or information, as used in this section, means evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue

under determination." *Id.* at cmt. (6). Consequently, the issue becomes whether the false information that Wilson gave to the court and probation office would have tended to influence or affect his sentence.

In *United States v. Charles*, 138 F.3d 257 (6th Cir.1998), the defendant appeared before a magistrate judge and gave a false name, thus concealing his past criminal history. During his sentencing, the district court gave him a two-level enhancement for obstruction of justice based, in part, on his use of a false name. This court affirmed the district court on this point and noted the following:

> We concur with the district court's conclusion that Charles used a false identification in order to deceive the magistrate judge and receive pre-trial release, and that this behavior constitutes obstruction of justice as defined by the sentencing guidelines.

*Id.* at 267.

Other circuits have upheld § 3C1.1 enhancements under similar circumstances. *See e.g., United States v. Berrios*, 132 F.3d 834, 842 (1st Cir.1998) ("Although he provided his real identity to the probation officer prior to the preparation of the presentencing report and the sentencing hearing, Berrios had participated in an entire criminal trial under a false name and status, which amount to an obstruction of justice."); *United States v. Garcia*, 69 F.3d 810, 817–18 (7th Cir.1995) ("If the identification given by the defendant is materially false—and a defendant's identity is indeed a material fact—then it is clear that the defendant was providing materially false information for the use of a judge or magistrate judge ...") (footnote omitted); *United States v. Pereira–Munoz*, 59 F.3d 788, 792 (8th Cir.1995) (holding that a defendant's use of a false name is a material fact and justified an enhancement for obstruction of justice); *United States v. Mafanya*, 24 F.3d 412, 415–16 (2d Cir.1994) (upholding an enhancement for obstruction of justice where the defendant appeared before a magistrate judge using a false

identity, even though the defendant's birth name was discovered before the detention hearing); *United States v. Dedeker*, 961 F.2d 164, 167 (11th Cir.1992) ("The 'issue under determination' when the probation officer inquires into past convictions is either what criminal history category shall apply, or, what sentence within the calculated range shall be appropriate. Clearly Dedeker's shoplifting history was material at least to the latter 'issue under determination'—and hence to the sentencing process as a whole.").

Under the sentencing guidelines, sentencing ranges are based, in part, on the defendant's criminal history. The fact that the offenses Wilson committed under his birth name were too old to qualify in establishing his criminal history category is not determinative because the information could well have influenced or affected the district court's determination of Wilson's sentence within the appropriate guideline range. This point was discussed in *United States v. Odedina*, 980 F.2d 705, 707 (11th Cir.1993), where the court reasoned as follows:

> Our court has stated that the threshold for materiality under the commentary to § 3C1.1 is conspicuously low.... The probation officer acknowledged that this misdemeanor conviction was not countable in Odedina's criminal history calculation. However, Odedina's failure to reveal his aliases and a conviction under one such alias was material, because this information, if believed, would tend to influence or affect the determination of Odedina's sentence within the appropriate guideline range.

Because Wilson's deliberate nondisclosures misled both the probation office and the court, the district court did not err when it gave Wilson a two-level enhancement for obstruction of justice.

**B. Acceptance of responsibility**

*1. Standard of Review*

■ The district court's factual findings as to whether a defendant has accepted responsibility for his criminal conduct will be disturbed only if they are clearly erroneous. *See United States v. Bradshaw*, 102 F.3d 204, 214 (6th Cir.1996). A factual finding is clearly erroneous when, although there is evidence to support that finding, "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948). If the only issue is the application of § 3E1.1 to undisputed facts, however, then the standard of review is de novo. *See United States v. Jeter*, 191 F.3d 637, 638 (6th Cir.1999). In the case at bar, we need not decide which standard to use because we conclude that the district court did not err under either standard.

*2. The district court's findings with respect to acceptance of responsibility were proper*

■ Section 3E1.1 of the U.S.S.G. provides that if a defendant "clearly demonstrates acceptance of responsibility for his offense," he is entitled to a decrease of two or possibly three offense levels. Application Note 4 to § 3E1.1 states that conduct resulting in an enhancement under § 3C1.1 (for obstruction of justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary circumstances where both § 3E1.1 and § 3C1.1 apply. *See* U.S. SENTENCING GUIDELINES MANUAL § 3C1.1, cmt. (4) (1999). In any event, the defendant bears the burden of demonstrating acceptance of responsibility. *See United States v. Mahaffey*, 53 F.3d 128, 134 (6th Cir.1995). The Second Circuit has noted that "it is rare that a defendant should be granted a reduction in offense level for acceptance of responsibility when the court has deemed it appropriate to increase her offense level for obstruction of justice." *United States v. Defeo*, 36 F.3d 272, 277 (2d Cir.1994) (holding that the defendant's attempt to falsify the results from court-administered drug tests supports a finding that she had not accepted responsibility).

■ The crux of Wilson's acceptance of responsibility argument is that he pled

guilty to the offense in a timely manner. Wilson, however, is not entitled to a reduction for acceptance of responsibility simply because of his timely plea. *See United States v. Guarin,* 898 F.2d 1120, 1122 (6th Cir.1990) (holding that the defendant's plea of guilty, by itself, was insufficient to justify a reduction in light of the fact that he refused to name his cocaine sources). He also asserts that he should not be denied the reduction for acceptance of responsibility on the basis of using an assumed name. The denial, however, was not based on his use of an assumed name per se, but rather on the basis that he had no right to mislead the court and the probation office about his birth name and criminal history. Additionally, Wilson's case does not present such extraordinary circumstances as to justify a reduction for acceptance of responsibility where he properly received an enhancement for obstructing justice. Because of Wilson's deceit, the district court found that he had not accepted responsibility. We agree.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.