**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Donald J. HAAS, II, Defendant–**
**Appellant.**

No. 00–5956.

United States Court of Appeals,
Sixth Circuit.

April 29, 2002.

**150**

Before NORRIS, SILER, and BATCHELDER, Circuit Judges.

BATCHELDER, Circuit Judge.

Defendant–Appellant Donald J. Haas, II ("Haas") appeals his conviction and sentence on two counts of being a felon in possession of a firearm. Haas complains that the district court erred in failing to discern the real issues presented in Haas's pre-trial motions to suppress evidence, and erred in denying the motions; that the district court erred by denying the post-trial motion to dismiss the indictment; that the district court erred by denying Haas's post-trial motion for an evidentiary hearing on alleged juror misconduct; and that the district court erred by enhancing Haas's sentence for obstruction of justice and by refusing to award Haas credit for acceptance of responsibility. Because we

conclude that Haas has waived all but one of his claims with regard to suppression and that the remaining claims are entirely without merit, we will affirm the judgment of conviction and sentence.

Haas's current troubles [1] began when someone broke into the home of Donald Stills ("Donald") in Greene County, Tennessee, and stole some old coins. Donald is the father of Haas's common-law wife, Julie Stills ("Julie"). Donald told Haas that he believed the culprits were Tony Nelson and Chad Kesterson. Haas went with Julie to Kesterson's residence on February 13, 1998, where they confronted Nelson and threatened to physically injure him if he did not return the coins to Donald. Haas and Julie then left Kesterson's residence, but returned later that night, accompanied by Donald and his brother, Charles. The four of them descended on Kesterson's residence, shouting and threatening to shoot into the house. Haas and Charles were carrying firearms. Several shots were in fact fired into the house, and one of the people inside, Susie Ricker, was calling the sheriff when a bullet whizzed by her head. When a deputy arrived at the house, Ricker was able to describe to him the clothes the shooter was wearing and to identify the weapon as a 9 mm pistol. The deputy interviewed several people at the house, and the following day a second deputy, Detective Ellison, took statements from Ricker, Nelson, and Kesterson, who identified Haas as one of their assailants; they also identified Haas as a shooter, and they placed the Stills brothers at the scene.

Concluding that Haas probably had weapons in his residence, Detective Ellison filed an affidavit in support of a request for a search warrant for Haas's home; the

---

1. Haas was convicted in 1991 in Florida of burglary of a dwelling, a felony under Florida law. He stipulated at trial that he was a felon.

affidavit included a description of the incident at Kesterson's residence and the statement that "witnesses stated that Donald Haas fired three (3) shots into the house with a handgun." A Tennessee state-court judge issued a search warrant that authorized police to search Haas's house at 1035 Mysinger Road for "weapons & ammunition." Police executed the search warrant on February 17, 1998, and seized ten guns. They did not, however, find the gun that Haas used to shoot at Kesterson's residence.

Ultimately, a federal grand jury issued a superseding indictment against Haas. Count One charged Haas with being a felon in possession of a handgun "on or about" February 12, 1998; Count Two charged him with being a felon in possession of the ten guns seized from him when police executed the search warrant and searched his home on February 17, 1998.

Haas filed several pre-trial motions, including one to suppress "any evidence or statements resulting from [the February 17, 1998] search." The sole basis for this motion was that Tennessee police allegedly knew that witnesses Nelson and Kesterson, whose information was central to the affidavit supporting the warrant, were not credible. The magistrate judge issued a report and recommendation, recommending that this motion be denied. The magistrate concluded that "[n]othing appear[s] to suggest that Kesterson or Nelson were anything other than credible *with respect to this incident*," and the warrant was supported by probable cause. Haas filed no objections to the magistrate's report and recommendation, and the district court adopted it and denied the motion to suppress the evidence. Several months later, Haas filed a motion to reconsider the motion to suppress, claiming that he had just discovered that the government had an investigator's report indicating that Charles Stills was the shooter. The district court reviewed the entire record and denied the motion to reconsider.

Haas proceeded to trial, and at the conclusion of the government's case, he moved to dismiss Count One of the indictment, claiming that the government had put on no evidence that Haas had possessed a weapon on the offense date specified in the indictment, February 12, 1998. The district court agreed with the government's argument that because the indictment said "on or about February 12, 1998," proof that the activity occurred on February 13 and 14, 1998, was sufficient, and denied the motion. Haas was convicted on both counts of the indictment.

Nearly two months after his December 1999 trial and conviction, Haas hired new counsel who filed motions to suppress the firearms seized during the February 17, 1998, search of Haas's home, for a new trial and for judgment of acquittal. The district court denied these motions as untimely.

Haas objected to the findings in the Presentence Investigation Report ("PSI") that he should receive a two-level enhancement for obstruction of justice and no reduction for acceptance of responsibility. The district court addressed the objections in a written opinion and overruled each of them. The court sentenced Haas in accordance with the calculations contained in the PSI. Haas then filed this timely appeal.

I

Haas first attacks the district court's denial of his motion to suppress the evidence seized during the search of his home. He claims that the warrant fails to identify correctly the place to be searched; that the warrant was based on a legally insufficient affidavit; and that the affidavit

contained false and misleading information upon which the magistrate relied. Haas contends that we must review de novo the district court's denial of his motions to suppress.

Our review of the record persuades us that we may review only Haas's claim that the affidavit contained false and misleading information. None of the other grounds upon which Haas now claims the warrant was defective were raised before the district court. A motion to suppress evidence must be made prior to trial. FED. R. CRIM. P. 12(b)(3). And although Haas did make such a motion—indeed, he took two stabs at it prior to trial—he wholly failed to raise any challenge to the facial validity of the warrant or the affidavit or to raise any claim that the information contained in the affidavit was insufficient. Haas was required to raise these objections prior to trial. FED. R. CRIM. P. 12(f); see also United States v. Obiukwu, 17 F.3d 816, 820 (6th Cir.1994) (holding that under Rule 12(f) we are without jurisdiction to consider suppression issues raised for the first time on appeal). It is not enough for him to complain on appeal that although his pre-trial motions to suppress "did not focus" on these specific objections, the district court should have understood his arguments from his brief general statement of the hornbook law governing review of the validity of a search warrant. Haas waived those objections.

Because in his pretrial motions to suppress Haas did raise a claim that the affidavit contained false information, we may review this assignment of error. We review for clear error and in the light most favorable to the government a district court's findings of fact with regard to the denial of a motion to suppress; we review de novo the court's conclusions of law. United States v. Harris, 255 F.3d 288, 292 (6th Cir.2001).

■ In his first pretrial motion to suppress, Haas challenged the validity of the warrant on the ground that two of the witnesses who provided information contained in the supporting affidavit were not credible. He did not, however, claim that the information they had provided was false; neither did he provide any information whatsoever to support his claim that the witnesses lacked credibility. The magistrate found that there was no evidence that these two witnesses were not credible with respect to the incident at issue; the magistrate concluded as well that ample probable cause supported the warrant. Haas did not object to the magistrate's finding. We conclude that even if there were error here, which we think there is not, Haas has waived his right to raise it. Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). That is not the end of the matter, however, because Haas filed a motion to reconsider the denial of the motion to suppress, claiming that he had new evidence in the form of a report from the deputy who went to the Kesterson home the night of the shooting; that report stated that according to the "complainant," whom the report does not identify, Charles Sills had the gun and did the shooting. Haas claimed that this report demonstrated the falsity of the affidavit because, contrary to the affidavit's statement, only one witness said that Haas was the shooter during the fracas at Kesterson's house. After consideration of the record as a whole, the district court denied the motion for reconsideration.

■ We find no error here. The record as a whole reveals that Detective Ellison obtained statements from witnesses who indicated that there was more than one shooter, and that one of those was Haas. The report from the other investigator indicates that the unidentified complainant whom he interviewed identified Charles

Stills as the shooter. These two pieces of information are not necessarily inconsistent, and do not support Haas's contention that the affidavit's statement that "witnesses" saw Haas shoot into the house was false. Neither does Ellison's failure to include in the affidavit the other investigator's information render the affidavit false and misleading. Ellison interviewed several witnesses from whom he obtained information that Haas fired shots into Kesterson's house. That someone else also may have done so does not vitiate Ellison's information, nor does it eliminate probable cause to believe that Haas would have weapons at his home.

## II

Haas assigns as error the district court's denial of his motion, made at the conclusion of the government's case, to dismiss Count One of the indictment. The date specified in Count One is February 12, 1998, and the evidence presented at trial was that the shooting at Kesterson's residence occurred very late on February 13th and very early on February 14th. Haas maintains that the government presented no evidence that he possessed a gun on February 12, 1998, and, further, that the specification of that date in the indictment prejudiced him in preparing his defense because he prepared his alibi based upon February 12th, not February 13th.[2] Essentially, Haas is making a variance claim. *See United States v. Barrow*, 118 F.3d 482, 488 (6th Cir.1997) ("A variance [to the indictment] occurs when the charging terms [of the indictment] are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment.") (internal quotation marks

omitted) (quoting *United States v. Hathaway*, 798 F.2d 902, 910 (6th Cir.1986)).

We review de novo whether there was a variance between the indictment and the proof offered at trial. *United States v. Bearden*, 274 F.3d 1031, 1039 (6th Cir. 2001). A variance will not constitute reversible error unless "substantial rights" of the defendant have been affected. *Hathaway*, 798 F.2d at 910. Substantial rights are affected only when a defendant shows prejudice to his ability to defend himself at trial, to the general fairness of the trial, or to the indictment's sufficiency to bar subsequent prosecutions. *Id.* No substantial rights of the defendant are affected when the indictment charges that the offense occurred "on or about" a particular date and the government proves at trial that the offense occurred reasonably close to that date. "Where 'on or about' language is used, the government is not required to prove the exact date, if a date reasonably near is established. This is especially true where ... the exact time when an offense was committed is not an essential element of the offense charged." *United States v. Nersesian*, 824 F.2d 1294, 1323 (2d Cir.1987) (internal quotations and citations omitted); *see also United States v. Ford*, 872 F.2d 1231, 1236 (6th Cir.1989) (citing *Nersesian* with approval).

As was the case in *Neresian*, the exact time is not an element of the offense charged. Haas is charged with being a felon in possession of a firearm, not with the shootings themselves. Any variance was not material, and Haas can show no prejudice to his substantial rights. Although the events surrounding Haas's possessing a firearm "on or about February 12, 1998" actually happened in the late

---

**2.** This claim of error relates only to Count One, which charged Haas with possessing a handgun when he fired three shots into Kesterson's house. It has no bearing on Count

Two, which addressed Haas's possessing weapons on February 17, 1998, the date those weapons were seized from his home.

night hours of February 13th and the early morning hours of February 14th, Haas was not hampered in his ability to present his alibi defense to the jury. He testified that he is an over-the-road truck driver; that on February 12, he was on a run from Toledo, Ohio, to Cleveland, Ohio; and that he returned to the Greene County, Tennessee, area at about 11:30 or 11:45 p.m. on February 13th, went to his home with Julie, and went nowhere else that night. The indictment provided sufficient notice to Haas that he was able to present to the jury an alibi addressing his whereabouts during the time when Kesterson's home was under attack. *See, e.g., United States v. Fields,* 2000 WL 1140557 at *5 (6th Cir. Aug.4, 2000) ("The language of the indictment put Fields on notice that he could be found guilty of possessing a firearm on July 21 as well as July 22.") (citing *Ford,* 872 F.2d at 1236). The district court did not err in denying the motion to dismiss Count One.

### III

Months after his December 1999 trial, Haas moved for a new trial on grounds of newly discovered evidence, claiming that it had been reported to his new counsel that jurors appeared to be inattentive and asleep during Haas's trial, and that an evidentiary hearing was required to determine whether in fact some jurors had slept through parts of the trial. Haas provided no evidence that any juror had been thus occupied, but argued that if it were true, the proper remedy was to set aside his conviction and give him a new trial. The district court denied Haas's motion as untimely under Rule 33 of the Federal Rules of Criminal Procedure.

We review for abuse of discretion the district court's denial of a motion for a new trial based on newly discovered evidence. *United States v. O'Dell,* 805 F.2d 637, 640

(6th Cir.1986). Newly discovered evidence is an exception to Rule 33's seven-day limitation on new-trial motions. *See United States v. Garcia,* 19 F.3d 1123, 1126 (6th Cir.1994). For purposes of an otherwise untimely new-trial motion, newly discovered evidence is not evidence that was within the defendant's knowledge at the time of trial. *See id.* Whether Haas's new counsel had any way of knowing the truth about jurors' sleeping and being inattentive is beside the point. It was Haas's burden to demonstrate that the evidence he claimed was newly discovered (1) was discovered after the trial; (2) was material and not merely cumulative or impeaching; (3) was not discoverable earlier in the exercise of due diligence; and (4) was of the kind that would likely produce an acquittal. *See O'Dell,* 805 F.2d at 640. Haas made no effort to address any of these points before the district court. For that matter, he makes no effort to do so on appeal. We find no abuse of discretion here.

### IV

Haas challenges a two-point increase in his offense level, which was imposed under § 3C1.1 of the Sentencing Guidelines because the district court found that Haas perjured himself at trial. In reviewing a defendant's challenge to his sentence, we must "accept the findings of fact of the district court unless they are clearly erroneous and ... give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e). We have recently held that the Supreme Court's decision in *Buford v. United States,* 532 U.S. 59, 121 S.Ct. 1276, 149 L.Ed.2d 197 (2001) changes our prior law with regard to the standard of review applicable to the sentencing court's adjustment for obstruction of justice under § 3C1.1. *United States v. Jackson–Ran-*

*dolph,* 282 F.3d 369 (6th Cir.2002). There we said that *Buford* signals that we will give appropriate deference to the district court's sentencing decisions under § 3C1.1 by applying the clear error standard to the court's application of the guidelines to the facts, at least "where the sole issue before the district court is a fact-bound application of the guideline provisions." *Id.* at 390. *Jackson–Randolph* involved the government's claim—factually disputed by the defendant—that the defendant had quitclaimed her ownership in various properties to which the government had a potential forfeiture claim, and that she had done so with notice of the government's claim and with the intent to obstruct the potential forfeiture.

The obstruction adjustment to which Haas objects is not the kind of "fact-bound application of the guideline provisions" found in *Jackson–Randolph*. Rather, it is an adjustment for perjury, and although the sentencing court must make the factual determination that the defendant has given false testimony—a determination that we review for clear error—the court may apply the adjustment only if it makes the findings required by the settled law of this circuit. We think this is a question of law that we must review de novo.

In a written opinion addressing Haas's objection to the obstruction adjustment, the district court reviewed verbatim the trial testimony of two witnesses who were in the Kesterson house when it was fired upon. The court also reviewed verbatim Haas's trial testimony that he had not been on the Kesterson premises when the shooting was going on and that he had not participated in it. The district court found by clear and convincing evidence that Haas had testified falsely that he was not present during the shooting and was not involved in it. The court also found that Haas had wilfully testified falsely, that his false testimony was with regard to a material matter, and that he had testified falsely in order to obstruct justice. Those findings are not clearly erroneous.

■ The district judge concluded that Haas should receive a two-point increase in offense level under U.S.S.G. § 3C1.1. In *United States v. Sassanelli,* 118 F.3d 495 (6th Cir.1997), we held that in order to increase the defendant's sentence because the defendant committed perjury, the sentencing court must identify the particular portions of the defendant's testimony that it finds to have been perjurious, and must, at a minimum, make a finding that includes all of the factual predicates for a finding of perjury. *Id.* at 501. The Supreme Court explained in *United States v. Dunnigan,* 507 U.S. 87, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993), that the factual predicates of perjury are contained in the federal criminal perjury statute, and "[a] witness testifying under oath or affirmation violates this statute if she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *Id.* at 94. We hold that the district court made all of the findings required by the settled law of this circuit and the Supreme Court in applying the obstruction adjustment. We find no error in the district court's increasing Haas's offense level for perjury.

■ Haas assigns as error the district court's refusal to reduce his offense level for acceptance of responsibility, complaining among other things that he had accepted responsibility for Count Two, which should entitle him to the reduction. "The determination of whether a defendant has accepted responsibility is a factual question which should be accorded great deference and should not be disturbed unless clearly erroneous." *United States v. Chambers,* 195 F.3d 274, 278 (6th Cir.1999)

(quoting *United States v. Surratt,* 87 F.3d 814, 821 (6th Cir.1996)). This circuit has repeatedly held that where an offense level has been increased for obstruction of justice, a reduction for acceptance of responsibility will be appropriate only in the most extraordinary cases. *See, e.g., United States v. Wilson,* 197 F.3d 782, 786–87 (6th Cir.1999); *United States v. Mahaffey,* 53 F.3d 128, 134 (6th Cir.1995). Furthermore, we have cited with approval opinions from other circuits holding that a defendant convicted on more than one count must accept responsibility for each count before he is entitled to a reduction in offense level. It is the defendant's burden to demonstrate by a preponderance of the evidence that he is entitled to the reduction. *Chambers,* 195 F.3d at 278. It is also the defendant's burden to demonstrate that his circumstances are extraordinary. *Wilson,* 197 F.3d at 786. Haas has wholly failed to meet this burden. We find no error here.

## V.

Finally, just before oral argument, Haas filed a citation of supplemental authorities under Rule 28(j) of the Federal Rules of Appellate Procedure. In his letter, Haas tried to raise an *Apprendi* issue vis-a-vis the district court's application of the adjustment for obstruction on account of perjury. Haas filed another Rule 28(j) letter after oral argument, inviting us to hold our decision in this case pending the United States Supreme Court's decision in *United States v. Harris,* 243 F.3d 806 (4th Cir. 2001), *cert. granted in part,* —— U.S. ——, 122 S.Ct. 663, 151 L.Ed.2d 578 (2001). Rule 28(j) does not permit a party to raise issues or arguments that were not presented in the brief or argued to the court. Rather, it permits the parties to provide the court with supplemental authorities. Haas did not brief an *Apprendi* issue, and we will not entertain it now.

For the foregoing reasons, we AFFIRM Haas's conviction and sentence.